IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAURICE BROWN, et al., | ) |
|     Plaintiffs, | ) ) ) |
| v. | ) )   Case No. 3:14-cv-1266-SMY-PMF |
| STEVEN B. DUNCAN, et al., | ) ) ) |
|     Defendants. | ) |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court are motions for a temporary restraining order or preliminary injunction (Doc. Nos. 14, 46). Plaintiffs Maurice Brown and Steven Rutledge filed this action challenging the conditions of their prison confinement at Lawrence Correctional center. They allege that six defendants deprived them of their Eighth Amendment right to be free from cruel and unusual punishment by failing to take reasonable steps to protect them from harm by separating them from hostile inmates. The motions were heard on April 6, 2015.

    **I.    Preliminary Injunction/TRO**

In order to establish that they are entitled to a preliminary injunction or a temporary restraining order, plaintiffs must show that they have some likelihood of success on the merits of their claims, that they do not have an adequate remedy at law, and that they will suffer irreparable harm if the injunction is not granted. *Exell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). The Court must also consider the public interest, weighing factors in a sliding scale approach. *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). Injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2).

## II.     Count 1 – Maurice Brown

Brown remains confined at Lawrence Correctional Center. He suffers from bipolar disorder, characterized by apprehension and mood swings. He claims that defendants Duncan, Weaver, Hopper, Dellinger, and Godinez failed to protect him from a risk of harm from his former cell mates whose attitudes and/or behavior aggravated Brown's mental health symptoms. He reported that former cell mates who participated in gang activities or otherwise lacked motivation to abide by prison rules placed him at risk of personal injury or confrontation. In October, 2014, he filed an emergency grievance, seeking protective custody due to anticipated problems with one particular gang member and other inmates who are affiliated with that gang. He did not receive a response. He refused a housing assignment and was assigned to the segregation unit for approximately 30 days. While he was assigned to the segregation unit, he sought access to a crisis team and also tried to confer with a correctional counselor, without success. Brown takes Limbitrol, a medication indicated for treatment of symptoms of bipolar disorder. Some time ago, Brown was released from segregation and currently resides in general population. He is assigned to a cell in 1-house, upper 7, where he shares cell with a mature man who is scheduled to be released in the near future. The two have shared a cell for approximately 45 days, without incident. Brown has not been attacked by hostile inmates in the recent past.

## III.    Count 2 – Steven Rutledge

In late 2014 and the early part of 2015, Rutledge was confined at Lawrence Correctional Center. He was evaluated for protective custody status and denied. He attempted to obtain an administrative remedy by filing an emergency grievance and a simultaneous appeal to the administrative review board on August 1, 2014. The administrative review board rejected the

simultaneous appeal. Rutledge is currently housed at Menard Correctional Center. He has been at Menard since March 11, 2015. He is assigned to a single man cell in the North 2 cell house, which is operated as a disciplinary segregation unit. While the segregation unit houses inmates who are dangerous and hostile, some of Rutledge's enemies were transferred to other facilities. Those who remain at Menard do not have contact with Rutledge. He anticipates that he will be released from the segregation unit on May 1, 2015. At that point, he expects to have two options: either accept a housing assignment in general population or make a second request for protective custody status. He does not anticipate a transfer back to Lawrence Correctional Center in the near future. Rutledge believes he deserves approval for assignment to Menard's protective custody unit because of hostilities arising from his past efforts to assist prison investigations of inmate misconduct, leaked information generating a reputation among prisoners as being a snitch, and his own criminal behavior which appears to spark anger from gang members collectively known as Latin Folks. Rutledge has served approximately 22 years of a lengthy sentence. He does not expect to be released until 2022. The last time he was physically attacked by hostile inmates was 1997.

**IV.     Analysis**

While both plaintiffs have logical reasons to advocate in favor of prison housing reform, neither has a likelihood of success on the merits of their Eighth Amendment claims. In particular, the Seventh Circuit has held that the "failure to prevent exposure to risk of harm" does not rise to a constitutional violation absent a showing that the threat of harm materialized and physical harm resulted. *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996); *Doe v. Welborn*, 110 F.3d. 520, 523 (7th Cir. 1997). Because neither plaintiff has suffered more than a risk of physical harm as a

3

result of recent housing decisions at Lawrence Correctional Center, neither has a compensable Eighth Amendment claim against these defendants.  Moreover, the evidence shows that the particular circumstances motivating the requests for injunctive relief have evolved.  Brown was housed in a disciplinary segregation unit for a period of time but worked his way out and is now housed in general population.   He has been paired with a compatible cell mate and does not face a substantial risk of irreparable harm at his current location.  Rutledge remains in disciplinary segregation but was recently transferred to a facility offering a higher degree of security that is also equipped with a physical protective custody unit, which did not exist at Lawrence.  He is presently separated from inmates who might wish to cause him harm.  Because Rutledge was transferred and does not anticipate a return trip to Lawrence in the foreseeable future, his request for injunctive relief is moot.  *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir.1996).

## V.     Conclusion

IT IS RECOMMENDED that the motions for TRO/preliminary injunction (Doc. Nos. 14, 46) be DENIED.

SUBMITTED:   April 7, 2015 .

                s/Philip M. Frazier
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**